FRANCES M. NIGRO, RESPONDENT, v. KANSAS CITY MONUMENT COMPANY, A CORPORATION, APPELLANT.—158 S. W. (2d) 179.

Kansas City Court of Appeals.   January 5, 1942.

*Cowgill & Popham* and *Sam Mandell* for appellant.

*Frank D. Rader* and *I. Frank Rope* for respondent.

SHAIN, P. J.—The action herein is for damages for personal injuries alleged to have been received by plaintiff by reason of negligence on part of defendant.

Plaintiff alleges that "the said defendants were, on said December 6, 1939, engaged in the sale and erection of cemetery monuments and grave markers and, in the operation of said business, did maintain a sales room, offices, and shops for the purpose of marking said monuments, at the southeast corner of 22nd Street and Jackson Avenue, in Kansas City, Missouri, and that said defendant, in connection therewith, did maintain entrances and exits to said offices and shops on 22nd Street and Jackson Avenue, and did invite the public to enter its said premises thereto, upon and over said entrances and exits maintained for that purpose.

"Plaintiff further states that upon said date at about 9:30 o'clock P. M., the plaintiff herein, at the invitation of the defendant, entered said premises from the west side thereof for the purpose of selecting and purchasing a grave marker from the defendant; that one of the means of ingress and egress to and from said building and on the north side thereof consists of a flight of steps composed of cement leading from the street level to a height of approximately five feet; that said cement steps or stairway are immediately adjacent and parallel to a driveway upon said premises and used in connection with the business thereon, said driveway being paved with concrete; that at that point said concrete driveway is approximately four feet lower than the top step of said flight of cement steps, and that said steps are for the use of persons entering or leaving said defendant's premises upon the north side thereof; that on the date aforesaid, to-wit, December 6, 1939, at or about 9:30 o'clock P. M. thereof, the plaintiff, while leaving said defendant's premises attempted to descend said stairway or flight of cement steps described as aforesaid and, owing to the carelessness and negligence of the defendant, as hereinafter more specifically set forth, she was caused to fall with great force and violence from the top step of said flight of cement steps to the surface of said cement driveway, causing her to be seriously and permanently injured as hereinafter more specifically set forth.

"Plaintiff further states that it was the duty of the defendant to use ordinary care to provide and maintain said cement steps and stairways which were used as the east entrance and exit to and from said premises on the north side in a reasonably safe condition for use of its patrons and other persons who might enter or leave said premises by said steps, but plaintiff states that the defendant carelessly and negligently failed to do so in this, to-wit:"

Plaintiff alleges specific negligence of defendant in failing to provide a guide rail between the steps and the elevated portion of the

premises immediately adjacent to the driveway so as to prevent plaintiff and others from falling off, negligence in maintaining lights, and failure of warning. Plaintiff alleges that by reason of aforesaid negligence she was directly caused to fall from the elevation to the driveway below and seriously injure herself.

Defendant joins issue by general denial and "for further answer defendant Kansas City Monument Company states that if at the time and place set out in plaintiff's petition she sustained any injuries, which defendant denies, such injuries were contributed to or caused by the negligence of the plaintiff in failing to exercise a reasonable degree of care in looking where she was going, and in stepping off of the stairs described in plaintiff's petition, if she did so step off."

Trial was before jury, verdict for plaintiff in the sum of $1000, judgment in accordance with verdict and defendant appeals.

Defendant makes assignment of errors as follows:

"I

"Defendant's demurrer to the evidence was improperly refused because plaintiff's evidence, being all the evidence in the case, showed as a matter of law that defendant was not negligent, or that defendant's negligence, if any, was not the proximate cause of plaintiff's injury and showed further that her injury was caused or contributed to by her own negligence.

"II

"Defendant's demurrer to the evidence was improperly refused because plaintiff's evidence, being all the evidence in the case, showed as a matter of law that plaintiff voluntarily incurred all risk and danger attendant upon her descent of the stairs in pitch darkness."

Plaintiff and Dr. Ralph Perry, called by plaintiff, were the only witnesses called to testify in the case.

Plaintiff's evidence is to the effect that she went to the defendant's place of business as a customer and was escorted to the back of the sales room into the office, sometimes referred to as the parlor. Plaintiff entered by way of a front entrance and was directed to depart from another entrance into the street that opened out from the office.

The following questions and answers appear in plaintiff's testimony:

"Q. How long did you remain there then in that parlor? A. Not more than ten or fifteen minutes at the most. I don't think it was over ten minutes.

"Q. I mean after she brought your coat? A. It could have been ten minutes.

"Q. Then what did you do? A. In the meanwhile, Mrs. Giudici had some friends come in to see her and she asked me to stay to have some coffee and I told her I was terribly sorry that I had to rush home that my mother was terribly ill.

"Q. What door did they come in? A. The same door.

"Q. Was there a door leading out to the outside from the office where you were talking to Mrs. Giudici? A. From the room I had just been in?

"Q. Yes. A. That is the door I left from.

"Q. That was the office you refer to? A. Yes, sir.

"Q. And she led you to that door to go out, is that correct? A. Yes, sir.

"Q. When you got out of that door what happened? A. Well, she led me to the door and, of course, I thanked Mr. and Mrs. Giudici. I was quite content with the prices on the two markers and she led me to the door and she said 'Goodnight', and I said, 'Goodnight', and so I was just walking and she closed the door and after being in a lighted room and getting out in the dark I just couldn't see a thing; it was just terribly dark. They didn't have a porch light of any kind and the lights in the street were out.

"Q. No light on the street and no light on the porch? A. No.

"Q. No light of any kind to show you the way? A. No.

"Q. Could you observe the outline of the street from where you were on the porch? A. I could tell there was a street but it was quite a distance so I just stood there for a moment and tried to figure it out and after I got to walking I felt like dragging myself down and after I had gotten down those stairs from the porch leading to the little room before you get down you come to some more steps but I didn't know it and thinking I was walking straight ahead, but being night I may have walked to the side, but there was seven or eight stairs so when I had gotten to those stairs, feeling my way very carefully and thinking that was part of the stairs, I had gotten to one of the runners and my foot got caught on something—I thought it was level—and instead I had fallen over into the driveway.

"Q. The driveway was where, with reference to that walk? A. Right next to the runner.

"Q. Was it level with the walk you were on? A. No.

"Q. How much difference was there between the level of the walk and the driveway, approximately? A. You mean high?

"Q. Yes, that's right? A. About two and one-half feet to three.

"Q. Did you know at that time that the driveway was below the level of the walk? A. I had no idea."

The door, porch and steps leading to the street from the office are best shown by a photograph put in evidence by defendant as an exhibit. The photograph substantiates the situation as plead and testified to by plaintiff.

Plaintiff underwent a rigid cross-examination; however, nothing developed in the cross-examination that would justify elimination of either the above oral evidence or the situation shown by the photograph.

Defendant asked a demurrer at the close of plaintiff's case, which was refused, and defendant rested.

Defendant asked five instructions and all were given. These instructions eliminate defendant as an insurer, and requires the exit to the street to be only a reasonably safe place, and places full burden on plaintiff to prove her case, submits the issue of contributory negligence and includes an instruction governing conduct of parties on premises of another, known as incurred risk.

There is evidence that plaintiff received injury and no claim of excessive verdict.

Defendant under its "Assignment of Errors" cites many cases wherein the facts warranted the conclusion that the plaintiff therein was guilty of contributory negligence as a matter of law.

We conclude that under the evidence in this case we find such issue was one of fact for the jury and, therefore, we need not comment upon the cases cited.

Judgment affirmed. All concur.